UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ADRON LITTLMANE FLOYD,

        Plaintiff,        Case No. 2:04-cv-282

v.        Honorable Robert Holmes Bell

PATRICIA L. CARUSO, et al.,

        Defendants.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Adron Floyd filed this prisoner 42 U.S.C. § 1983 action against Defendants MDOC Director Patricia Caruso, Deputy Director Dennis Straub, Former Deputy Director Dan Bolden, Correctional Facility Administrator Chuck Zamiara, Warden Tim Luoma, Deputy Warden Greg McQuiggan, Deputy Warden Darlene Edlund, Resident Unit Manager Jondreau, Assistant Deputy Warden Luetzow, Case Manager Perttu, Case Manager Terry Swift, Resident Unit Officer Jim LaChance, Corrections Officer T. Datto, Corrections Officer Tennyson, Corrections Officer O'Dell, Sergeant Hays, Sergeant Haajata, R.N. Nancy Hulkoff, R.N. Carrie Hyrkas, and R.N. Diane Johnson.

The procedural history of this case is somewhat tortured. The case was filed in December of 2004. In January of 2005, the case was dismissed for lack of exhaustion. An appeal was filed with the Sixth Circuit in February of 2005. In June of 2006, an order was issued by the Sixth Circuit holding the case in abeyance pending resolution by the U.S. Supreme Court of the cases *Williams v. Overton*, 126 S.Ct. 1463 (U.S. Mar. 6, 2006) (No. 05-7142) and *Jones v. Bock*, 126 S.Ct.

1462 (U.S. Mar. 6, 2006) (No. 05-7058). In March of 2007, the case was remanded to this Court. Several dispositive motions were filed by Defendants in 2007. Those motions resulted in the dismissal of some of the defendants by order dated March 7, 2008. Thereafter, Defendants filed a new batch of dispositive motions which are the subject of this Report and Recommendation.

Plaintiff claims that he was assaulted by Defendants Recker, Datto, LaChance, Tennyson and Perry, and that Defendants O'Dell, Jondreau and Perttu failed to intervene on Plaintiff's behalf. Plaintiff states that Defendants Hays and Haajata refused to have Plaintiff's leg irons and belly chains loosened despite Plaintiff's pleas that they were painful and interfering with his circulation. Plaintiff contends that Defendant Nurses Nancy Hulkoff, Carrie Hyrkas and Diane Johnson were deliberately indifferent to Plaintiff's medical needs. Plaintiff alleges that Defendants Zamiara, Edlund and Luetzow violated policy to keep Plaintiff in maximum security in violation of Plaintiff's rights under the Eighth and Fourteenth Amendments and that Defendants Swift and McQuiggan transferred Plaintiff to level V in retaliation for filing grievances, which also violated the Eighth and Fourteenth Amendments. Plaintiff asserts that Defendant Bolden has supervisory liability for his subordinates' misconduct, and that Defendants Edlund and Luetzow were deliberately indifferent to Plaintiff's safety when they failed to remove Defendant LaChance from the segregation units. For relief, Plaintiff requests compensatory and punitive damages, as well as declaratory and injunctive relief.

Defendants move for summary judgment. Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits,

depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Id.* at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)). However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52. Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

Defendants Jondreau, Perttu, Hays, Haajata, Hulkoff, Hyrkas and LaChance argue that Plaintiff never properly exhausted his grievance remedies against them, requiring the dismissal of Plaintiff's excessive force claim. Defendants argue that since Plaintiff's grievance was rejected as untimely his claim is not properly exhausted. In *Woodford v. Ngo*, 548 U.S. 81 (2006), the Supreme Court held that the exhaustion requirement was not satisfied when grievances were dismissed because prisoners had missed deadlines set by the grievance policy. 548 U.S. at 91. Plaintiff explains that he initially filed a direct Step III grievance. The Step III grievance response informed Plaintiff to file a Step I grievance on these issues. Plaintiff's Step I grievance was rejected as untimely and his Step II and Step III appeals upheld the untimely rejection. Plaintiff asserts that

he did not receive the original Step III response dated October 1, 2003, until December 2003. Plaintiff claims that he filed his Step I grievance soon after he received the Step III response. Clearly, there is a dispute as to the date that Plaintiff received the Step III response directing him to file a Step I grievance. This is a dispute that the Court cannot resolve.

Although Plaintiff may have failed to comply with requirements of the MDOC grievance policy, his averments are sufficient to raise a question of fact as to whether all steps of the process were actually "available" to him within the meaning of 42 U.S.C. 1997e(a). *See Nixon v. Sanders*, No. 06-1013, 2007 WL 2349344, at *1 (8th Cir. Aug. 17, 2007) (citing *Miller v. Norris*, 247 F.3d 736, 740 (8th Cir. 2001) (prisoner's allegations that prison officials denied his requests for grievance forms could raise inference that he was prevented from utilizing prison's remedies; remedy that prison officials prevent prisoner from utilizing is not "available" under § 1997e(a)); *see also Dale v. Lappin*, 376 F.3d 652, 656 (7th Cir, 2004) (refusal to give prisoner grievance forms can render administrative grievance system unavailable); *Mitchell v. Horn*, 318 F.3d 523, 529 (3d Cir. 2003) (same); *Muhammad v. Gilmer Fed. Corr. Inst.*, No. 3:05-CV-91, 2007 WL 2815634, at *5 (N.D. W. Va. Sept. 25, 2007); *McDonald v. Schuster*, No. CV-02-1357-PHX-SRB, 2006 WL 411062, at *4 (D. Ariz. Feb. 16, 2006). Here, Plaintiff has alleged that the Step III grievance response was delayed so that he could not comply with the grievance procedures for filing a timely Step I grievance. As a consequence, Defendants have not established that they are entitled to dismissal of Plaintiff's excessive force claims for failure to exhaust grievance remedies.

Defendants Zamiara, Edlund and Luetzow assert that they were not personally involved in Plaintiff's classification. Defendants Zamiara, Edlund and Luetzow are members of the Security Classification Committee at AMF. Plaintiff filed a grievance and wrote letters to Defendants Zamiara, Edlund and Luetzow. Defendants Zamiara, Edlund and Luetzow did not

classify Plaintiff.  Plaintiff was classified to administrative segregation before he arrived at AMF. Liability under Section 1983 must be based on more than merely supervisory control.  *Polk Co. v. Dodson*, 454 U.S. 312, 325-26 (1981); *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978).  Thus, Section 1983 liability cannot be premised upon mere allegations of *respondeat superior*.  *Monell*, 436 U.S. at 691; *Polk*, 454 U.S. at 325.  A party cannot be held liable under Section 1983 absent a showing that the party personally participated in, or otherwise authorized, approved or knowingly acquiesced in, the allegedly unconstitutional conduct.  *See e.g. Leach v. Shelby Co. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989), *cert. denied*, 495 U.S. 932 (1990); *Hays v. Jefferson*, 668 F.2d 869, 874 (6th Cir.), *cert. denied*, 459 U.S. 833 (1982).  *See also Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir.), *cert. denied* 469 U.S. 845 (1984).

In addition, Plaintiff must show that defendant had some duty or authority to act.  *See e.g. Birrell v. Brown*, 867 F.2d 956, 959 (6th Cir. 1989) (lower level official not liable for shortcomings of building); *Ghandi v. Police Dept. of City of Detroit*, 747 F.2d 338, 351 (6th Cir. 1984) (mere presence at the scene is insufficient grounds to impose Section 1983 liability in the absence of a duty to act); *accord Hall v. Shipley*, 932 F.2d 1147 (6th Cir. 1991).  Merely bringing a problem to the attention of an official is not sufficient to impose such liability.  *See Shelly v. Johnson*, 684 F. Supp. 941, 946 (W.D. Mich. 1987) (Hillman, C.J.), *aff'd* 849 F.2d 228 (6th Cir. 1988).  Plaintiff has not presented any facts establishing that Defendants Zamiara, Edlund and Luetzow were involved in violating Plaintiff's constitutional rights.

Further, Plaintiff has no constitutional right to a particular security classification.  The Supreme Court held that a prisoner does not have a protected liberty interest in the procedures affecting his classification and security because the resulting restraint does not impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  *Sandin*

*v. Conner*, 515 U.S. 472, 486 (1995). In *Rimmer-Bey v. Brown*, 62 F.3d 789, 790-791(6th Cir. 1995), the Sixth Circuit applied the *Sandin* test to the claim of a Michigan inmate that the mandatory language of the MDOC's regulations created a liberty interest that he receive notice and hearing before being placed in administrative segregation. The court held that regardless of the mandatory language of the prison regulations, the inmate's did not have a liberty interest because his placement in administrative segregation did not constitute an atypical and significant hardship within the context of his prison life. *See also Mackey v. Dyke*, 111 F.3d 460 (6th Cir.), *cert. denied*, 118 S. Ct. 136 (1997). Without a protected liberty interest, Plaintiff cannot successfully claim that his due process rights were violated because, "process is not an end in itself." *Olim v. Wakinekona*, 461 U.S. 238, 250 (1983).

Moreover, the Supreme Court has repeatedly held that a prisoner has no constitutional right to be incarcerated in a particular facility or to be held in a specific security classification. *See Olim*, 461 U.S. at 245; *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976); *Meachum v. Fano*, 427 U.S. 215, 244 (1976). The Sixth Circuit has followed the Supreme Court's rulings in a variety of security classification challenges. *See, e.g.*, *Cash v. Reno*, No. 97-5220, 1997 WL 809982, *2 (6th Cir. Dec. 23, 1997) (prisoner's allegation that he was placed in a security level higher than warranted based on the information contained in his prison file failed to state a due process claim because he had no constitutional right to be held in a particular prison or security classification); *O'Quinn v. Brown*, No. 92-2183, 1993 WL 80292, *1 (6th Cir. March 22, 1993) (prisoner failed to state a due process or equal protection claim regarding his label as a "homosexual predator" because he did not have a constitutional right to a particular security level or place of confinement). Because Plaintiff does not have a constitutional right to a particular security level or classification, his claims regarding this issue must fail.

Plaintiff has no constitutional right to any particular placement or security classification. "[A]n inmate has no justifiable expectation that he will be incarcerated in any particular prison within a State." *Olim v. Wakinekona*, 461 U.S. 238, 245 (1983); *see also Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976). A change in security classification to a higher level of security, with nothing more, is not the type of atypical and significant deprivation in which an inmate might have a liberty interest. *See Sandin v. Conner*, 515 U.S. 472, 486 (1995); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790-791 (6th Cir. 1995); *Mackey v. Dyke*, 111 F.3d 460 (6th Cir.), *cert. denied*, 118 S. Ct. 136 (1997). Specifically, the Sixth Circuit has held that "the denial of participation in a community placement program is not the type of atypical and significant deprivation in which the state might create a liberty interest." *Davis v. Loucks*, No. 96-1583, 1997 WL 215517, at *1 (6th Cir. Apr. 29, 1997)(citing *Sandin v. Conner*, 515 U.S. 472 (1995)). In the absence of a recognized liberty interest, placing Plaintiff in higher security level facility or increasing his security classification raises no issue of constitutional magnitude. Consequently, Plaintiff cannot support his claims regarding an improper security classification.

Similarly, Plaintiff has not shown that his equal protection rights were violated based upon his classification level. The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. CONST., amend. XIV; *City of Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439 (1985). A state practice generally will not require strict scrutiny unless it interferes with a fundamental right or discriminates against a suspect class of individuals. *Massachusetts Board of Retirement v. Murgia*, 427 U.S. 307, 312 (1976). Plaintiff has failed to present a claim that any of his fundamental rights have been abridged.

A claim that Plaintiff was treated one way and everyone else was treated another way, by itself, is not sufficient to state an equal protection claim. *Newell v. Brown*, 981 F.2d 880, 887 (6th Cir. 1992), *cert. denied*, 510 U.S. 842 (1993). Rather, Plaintiff must show that he was victimized by some suspect classification. *Id*. Absent some allegation or proof that the law was applied differently to Plaintiff because of race, gender, age, or some other improper classification, no equal protection claim has been stated. *See Wagner v. Higgins*, 754 F.2d 186, 194 (6th Cir. 1985) (Conte, J., concurring); *see also Galbraith v. Northern Telecom, Inc.*, 944 F.2d 275, 282 (6th Cir. 1991), *cert. denied*, 503 U.S. 945 (1992) (a person's conduct is legitimate for purpose of the equal protection clause even though it may have been mean-spirited, ill-considered, or other unjustifiable, objectionable, or unreasonable, so long as it was not motivated by class-based discrimination).

Furthermore, Plaintiff has not alleged that he has been treated differently because he is a member of any protected class. Simply being a prisoner does not make Plaintiff a member of a protected class. *Hampton v. Hobbs*, 106 F.3d 1281, 1286 (6th Cir. 1997); *see also Copeland v. Machulis*, 57 F.3d 476, 480 (6th Cir. 1995) (to establish equal protection claim, inmate must prove that a racially discriminatory intent or purpose was a factor in the decision of the prison officials). Therefore, he fails to state a claim for a violation of the Equal Protection Clause.

To establish a violation of the Equal Protection Clause, an inmate must show that the defendants purposefully discriminated against him. *Village of Arlington Heights v. Metropolitan Hous. Dev. Corp.*, 429 U.S. 252, 265 (1977). Such discriminatory purpose must be a motivating factor in the actions of the defendants. *Id*. at 265-66. In the opinion of the undersigned, Plaintiff has not established any violation of his equal protection rights.

Plaintiff claims that Defendants Swift and McQuiggan retaliated against him for filing grievances by transferring him to a level V facility. Defendants Swift and McQuiggan are part of

the Security Classification Committee at the Chippewa Correctional Facility that transferred Plaintiff to level V in 2000. Plaintiff has generally asserted that he was retaliated against. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir.1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Thaddeus-X*, 175 F.3d at 394. Moreover, Plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)). Plaintiff generally alleges that he engaged in protective conduct by filing grievances. Plaintiff, however, has failed to show that adverse conduct was taken against him that would deter an ordinary person from continuing to engage in the grievance process or that his transfer was motivated by his grievance filings. Similarly, in the opinion of the undersigned, Plaintiff cannot support a Fourteenth Amendment or Eighth Amendment claim against these Defendants based upon his level V classification.

Plaintiff claims that Defendants Edlund and Luetzow violated his Eighth Amendment rights because Resident Unit Officer LaChance beat Plaintiff while Plaintiff was confined in administrative segregation. Plaintiff theorizes that Defendants should have known that Defendant LaChance presented a risk of harm because other inmates had filed grievances against Defendant LaChance. Plaintiff has shown no personal involvement that could have prevented the alleged excessive force by any defendant.

Plaintiff argues that the MDOC security classification system violates his Eighth and Fourteenth Amendment rights. Plaintiff has no Fourteenth Amendment right to a particular security classification. *Sandin v. Conner*, 515 U.S. 472, 486 (1995); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790-791(6th Cir. 1995). Nor has Plaintiff shown a violation of his Eighth Amendment rights regarding his security classification. The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-601 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "Not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. Similarly, Plaintiff's assertion that his equal protection rights were violated because as a level V prisoner he is not afforded the same privileges as all other prisoners. Plaintiff claims that placement in level V requires one additional step for female prisoners that is not required for male prisoners. In the opinion of the undersigned these are insufficient reasons to support an equal protection claim. Plaintiff has failed to show that he similarly situated to someone who was treated differently or that he was discriminated against by any defendant.

Defendants move for qualified immunity.  Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.  *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  An "objective reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful.  *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987).

The procedure for evaluating claims of qualified immunity is tripartite:  First, we determine whether a constitutional violation occurred;  second, we determine whether the right that was violated was a clearly established right of which a reasonable person would have known; finally, we determine whether the plaintiff has alleged sufficient facts, and supported the allegations by sufficient evidence, to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights.  *Williams v. Mehra*, 186 F.3d 685, 690 (6th Cir. 1999).

When determining whether a right is clearly established, this court must look first to decisions of the United States Supreme Court, then to decisions of the Sixth Circuit and to other courts within this Circuit, and finally to decisions of other circuits.  *Dietrich*, 167 F.3d at 1012.  An official action is not necessarily protected by qualified immunity merely because the very action in question has not previously been held to be unlawful.  Rather, in light of pre-existing law, the unlawfulness of the official's conduct must be apparent.  *Dietrich*, 167 F.3d at 1012; *Wegener v. City of Covington*, 933 F.2d 390, 392 (6th Cir. 1991).

When making a qualified immunity analysis, the facts must be interpreted in the light most favorable to the Plaintiff. Part of the analysis is to determine whether there are any genuinely disputed questions of material fact. *Kain v. Nesbitt*, 156 F.3d 669, 672 (6th Cir. 1998). Where there is a genuinely disputed question of fact, it is for the trier of fact to resolve, not the judge. "This would be true notwithstanding that the trial judge found the [defendant] officer to be more credible than the plaintiff because it is not for the court to make credibility determinations at this stage of the proceeding." *Id.*

The operation of the qualified immunity standard depends substantially upon the level of generality at which the relevant legal rule is to be identified.

> The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in light of the preexisting law the unlawfulness must be apparent.

*Anderson*, 483 U.S. at 639-40. *See also Durham v. Nu'Man*, 97 F.3d 862, 866 (6th Cir. 1996), *cert. denied*, 520 U.S. 1157 (1997).

The Sixth Circuit has observed:

> A right is not considered clearly established unless it has been authoritatively decided by the United States Supreme Court, the Court of Appeals, or the highest court of the state in which the alleged constitutional violation occurred.

*Durham*, 97 F.3d at 866 (citing *Robinson v. Bibb*, 840 F.2d 349, 351 (6th Cir. 1988)).

Thus, qualified immunity is not triggered only where the very action in question was previously held unlawful. *Anderson*, 483 U.S. at 639-40. Rather, the test is whether the contours of the right were sufficiently clear that a reasonable official would understand that what he is doing violated Plaintiff's federal rights. *Id.*

- 12 -

Furthermore, a defendant need not actively participate in unlawful conduct in order to be liable under Section 1983. Rather, a defendant may be liable where he has a duty to protect a plaintiff and fails to comply with this duty. *Durham*, 97 F.3d at 866-868 (holding that a nurse and a security guard at a state hospital may be liable under Section 1983 where they do not take action to prevent a patient from being beaten). *See also McHenry v. Chadwick*, 896 F.2d 184 (6th Cir. 1990)(a correctional officer who observes an unlawful beating may be liable under Section 1983 even though he did not actively participate in the beating), and *Bruner v. Dunaway*, 684 F.2d 422 (6th Cir. 1982), *cert. denied sub nom*, *Bates v. Bruner*, 459 U.S. 1171 (1983) (police officers who stood by and observed an unlawful beating by fellow officers could be held liable under Section 1983).

When faced with a qualified immunity defense, the court must first determine whether or not the plaintiff has stated a claim upon which relief can be granted. *Siegert v. Gilley*, 500 U.S. 226, 232 (1991); *Turner*, 119 F.3d at 429. If the court answers that question in the affirmative, the court goes on to determine whether or not the right allegedly violated was clearly established. *Turner*, 119 F.3d at 429. These are both purely legal questions. The immunity issue should not be resolved if there are factual disputes on which the issue of immunity turns such that it cannot be determined before trial whether the Defendants' conduct violated clearly established rights. *Hall v. Shipley*, 932 F.2d 1147, 1154 (6th Cir. 1991). For the reasons previously stated, it is recommended that the Court find that Defendants Zamiara, Edlund, Luetzow, Swift and McQuiggan are entitled to qualified immunity. Further, Plaintiff never presented any allegations that could support a claim against defendant Luoma.

Defendant O'Dell filed a motion for summary judgment in which she "joins and incorporates" her co-defendants' motion for summary judgment. Defendant O'Dell has provided

no further argument specific to Defendant O'Dell.  Accordingly, because Defendant O'Dell has failed to provide any specific argument establishing that she is entitled to summary judgment, it is recommended that the Court deny her motion.

Plaintiff has filed a motion for a temporary restraining order and preliminary injunction against Defendants Tennyson, Recker, Datto LaChance, seeking a transfer away from Defendant Tennyson.  Plaintiff believes that he will attack Defendant Tennyson or that Defendant Tennyson will attack Plaintiff.  The issuance of preliminary injunctive relief is committed to the discretion of the district court.  *Planned Parenthood Association v. City of Cincinnati*, 822 F.2d 1390, 1393 (6th Cir. 1987).  In exercising that discretion, the court must consider and balance four factors:

> 1.  Whether the movant has shown a strong or substantial likelihood or probability of success on the merits.
>
> 2.  Whether the movant has shown irreparable injury.
>
> 3.  Whether the preliminary injunction could harm third parties.
>
> 4.  Whether the public interest would be served by issuing a preliminary injunction.

*Washington v. Reno*, 35 F.3d 1093 (6th Cir. 1994).  These factors are not prerequisites to the grant or denial of injunctive relief, but factors that must be carefully balanced by the district court in exercising its equitable powers.  *Id.*

Moreover, where a prison inmate seeks an order enjoining state prison officials, this Court is required to proceed with the utmost care and must recognize the unique nature of the prison setting.  *See Kendrick v. Bland*, 740 F.2d 432 at 438, n.3, (6th Cir. 1984).  *See also Harris v. Wilters*, 596 F.2d 678 (5th Cir. 1979).  It has also been remarked that a party seeking injunctive relief bears a heavy burden of establishing that the extraordinary and drastic remedy sought is appropriate under

the circumstances. *See Checker Motors Corp. v. Chrysler Corp.*, 405 F.2d 319 (2d Cir. 1969), *cert. denied*, 394 U.S. 999 (1969). *See also O'Lone v. Estate of Shabazz*, 482 U.S. 342 (1986).

Plaintiff's "initial burden" in demonstrating entitlement to preliminary injunctive relief is a showing of a strong or substantial likelihood of success on the merits of his Section 1983 action. *NAACP v. City of Mansfield, Ohio*, 866 F.2d 162, 167 (6th Cir. 1989). A review of the materials of record fails to establish a substantial likelihood of success with respect to Plaintiff's claim that the Defendants have violated his federal rights. Furthermore, Plaintiff has failed to establish that he will suffer irreparable harm absent injunctive relief.

Finally, in the context of a motion impacting on matters of prison administration, the interests of identifiable third parties and the public at large weigh against the granting of an injunction. Any interference by the federal courts in the administration of state prison matters is necessarily disruptive. The public welfare therefore militates against the issuance of extraordinary relief in the prison context, absent a sufficient showing of a violation of constitutional rights. *See Glover v. Johnson*, 855 F.2d 277, 286-87 (6th Cir. 1988). That showing has not been made here.

Because Plaintiff has failed to meet the heavy burden establishing the need for injunctive relief, I recommend that Plaintiff's motion for a temporary restraining order and preliminary injunction (Docket #87) be denied.

Plaintiff has also filed a motion for discovery requesting certain documents that he allegedly needed to respond to Defendants' summary judgment motions. Much of what Plaintiff requested is unnecessary and would not assist him in arguing against Defendants' motions. Moreover, it does not appear that Plaintiff made a proper discovery request to Defendants. It is recommended that the Court deny Plaintiff's motion for discovery (Docket #80). It is further

recommended that the Court deny Plaintiff's motion for enlargement of time and for discovery (Docket #82).

In summary, it is recommended that the motion for summary judgment filed by Defendants Caruso, Datto, Edlund, Haajata, Hays, Hulkoff, Hyrkas, Jondreau, Luetzow, McQuiggan, Perttu, Recker, Straub, Swift, Tennyson and Zamiara (Docket #76) be granted in part and denied in part, that the motion for summary judgment filed by Defendants LaChance and Luoma (Docket #109) be granted in part and denied in part, and that summary judgment be granted to Defendants Zamiara, Edlund, Luetzow, Swift, McQuiggan and Luoma only.  It is further recommended that the motion for summary judgment filed by Defendant O'Dell (Docket #98) be denied.  Finally, it is recommended that Plaintiff's motion for a temporary restraining order and preliminary injunction (Docket #87), motion for discovery (Docket #80), and motion for extension of time and for discovery (Docket #82) be denied.

NOTICE TO PARTIES:  Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b).  Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985).

    /s/ Timothy P. Greeley  
    TIMOTHY P. GREELEY  
    UNITED STATES MAGISTRATE JUDGE

Dated:   January 9, 2009