UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION


ADRON LITTLMANE FLOYD,

              Plaintiff,                  Case No. 2:04-cv-282

v.                                    Honorable Robert Holmes Bell

PATRICIA L. CARUSO, et al.,

              Defendants.

_____/


## REPORT AND RECOMMENDATION

Plaintiff Adron Littlmane Floyd, an inmate currently confined at the Alger Maximum

Correctional Facility (LMF), filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against

several employees of the Michigan Department of Corrections (MDOC).  Specifically, Defendants

include MDOC Director Patricia Caruso, Deputy Director Dennis Straub, Former Deputy Director

Dan Bolden, Correctional Facility Administrator Chuck Zamiara, Warden Tim Luoma, Deputy

Warden G. M. Quiggin[1], Deputy Warden Darlene Edlund, Resident Unit Manager Joureau[2],

Assistant Deputy Warden Luetzow, Case Manager Perttu, Case Manager Terry Swift, Resident Unit

Officer Jim LaChance, Resident Unit Officer Recker, Corrections Officer T. Datto, Corrections

Officer Tennyson, Corrections Officer O'Dell, Sergeant Hay, Sergeant Haataja, R.N. Nancy

(Hulkoff), R.N. Carrie (Hyrkas), and R.N. Johnson.

---

[1]Also named as "McQuiggin."

[2]Also named as "Jondreau."

Plaintiff's complaint alleges that while he was confined at the Baraga Maximum Correctional Facility (AMF), he was assaulted by Defendants Recker, LaChance, Tennyson, Perry and Datto, and that Defendants O'Dell, Joureau and Perttu failed to intervene on Plaintiff's behalf. Plaintiff states that Defendants Hayes and Haataja refused to have Plaintiff's leg irons and belly chains loosened despite Plaintiff's pleas that they were painful and interfering with his circulation. Plaintiff contends that the Defendant Nurses Hulkoff, Hyrkas and Johnson were deliberately indifferent to Plaintiff's medical needs. Plaintiff alleges that Defendants Zamiara, Edlund and Luetzow violated policy to keep Plaintiff in maximum security in violation of Plaintiff's rights under the Eighth and Fourteenth Amendments and that Defendants Swift and Quiggin transferred Plaintiff to level V in retaliation for filing grievances, which also violated the Eighth and Fourteenth Amendments. Plaintiff asserts that Defendant Bolden has supervisory liability for his subordinates' misconduct, and that Defendants Edlund and Luetzow were deliberately indifferent to Plaintiff's safety when they failed to remove Defendant LaChance from the segregation units. For relief, Plaintiff requests compensatory and punitive damages, as well as declaratory and injunctive relief.

The case was initially filed in December of 2004. In January of 2005, the case was dismissed for lack of exhaustion. An appeal was filed with the Sixth Circuit in February of 2005. In June of 2006, an order was issued by the Sixth Circuit holding the case in abeyance pending resolution by the U.S. Supreme Court of the cases *Williams v. Overton*, 126 S.Ct. 1463 (U.S. Mar. 6, 2006) (No. 05-7142) and *Jones v. Bock*, 126 S.Ct. 1462 (U.S. Mar. 6, 2006) (No. 05-7058). In March of 2007, the case was remanded to this Court. Several dispositive motions were filed by Defendants in 2007. Those motions resulted in the dismissal of Defendant Bolden by order dated March 7, 2008. Thereafter, Defendants filed a new batch of dispositive motions, which resulted in the April 23, 2009, dismissal of Defendants Zamiara, Edlund, Luetzow, Swift, Quiggin and Luoma.

Currently before the court is the Motion for Summary Judgment filed by Defendants Joureau, Perttu, Hulkoff, LaChance, Hyrkas, Recker, Datto, Tennyson, O'Dell, Hay, Haataja, Caruso and Straub, pursuant to Fed. R. Civ. P. 56 (docket #131). Plaintiff has filed a response and the matter is ready for decision. Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Id.* at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)). However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52. Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

Defendants state that they are entitled to summary judgment on Plaintiff's Eighth Amendment claims because Plaintiff is unable to offer any evidentiary support for his claims. The

Eighth Amendment embodies a constitutional limitation on the power of the states to punish those convicted of a crime. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *See Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981); *Trop v. Dulles*, 356 U.S. 86, 101 (1958). The Eighth Amendment also prohibits conditions of confinement which, although not physically barbarous, "involve the unnecessary and wanton infliction of pain." *Rhodes*, 452 U.S. at 346. Among unnecessary and wanton infliction of pain are those that are "totally without penological justification." *Id.* However, every malevolent touch by a prison guard does not give rise to an Eighth Amendment cause of action, *see Hudson v. McMillian*, 503 U.S. 1, 9 (1992), and the prisoner must allege that he sustained more than de minimis injury in order to state a viable excessive force claim. *See id.* at 9-10; *Thaddeus-X v. Blatter*, 175 F.3d 378, 402 (6th Cir. 1999) (en banc).

In its prohibition of "cruel and unusual punishments," the Eighth Amendment places restraints on prison officials, directing that they may not use excessive physical force against prisoners and must also "take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-527 (1984)). To establish liability under the Eighth Amendment for a claim based on a failure to prevent harm to a prisoner, plaintiffs must show that the prison officials acted with "deliberate indifference" to a substantial risk that the defendant would cause prisoners serious harm. *Farmer,* 511 U.S. at 834; *Helling v. McKinney*, 509 U.S. 25, 32 (1993); *Woods v. Lecureux*, 110 F.3d 1215, 1222 (6th Cir. 1997); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir.1996); *Taylor v. Mich. Dep't of Corr.* 69 F.3d 76, 79 (6th Cir.1995). *See Curry v. Scott*, 249 F.3d 493, 506 (6th Cir. 2001).

In Plaintiff's complaint, he alleges that Defendants Recker, Datto, LaChance and Tennyson tried to trip him down a flight of stairs, called him stupid and slapped him, punched him

in the jaw, stomped him in the face, threw him into his cell head first, and entered his cell and began stomping him again, causing him to black out. Plaintiff also alleges that Defendants O'Dell, Joureau and Perttu watched the attack and failed to intervene.

In support of the motion for summary judgment, Defendants offer their affidavits, in which they attest that Defendants Datto and LaChance were escorting Plaintiff to a telephone on July 10, 2003, when he became loud and disruptive. Defendant Joureau noticed Plaintiff's disruptive behavior and warned him that if he continued, he would be returned to his cell. Plaintiff was allowed to use the telephone and, as he was being taken back to his cell, he again became disruptive and spat at the officers, striking Defendant LaChance on the shoulder. Plaintiff then grabbed the railing to the stairs and began kicking. Defendant Recker arrived to assist in the situation and Plaintiff was placed on the floor and leg irons were applied, while Plaintiff resisted and kicked. Plaintiff was then carried to his cell and placed inside. Once inside, Plaintiff rolled to his back and began kicking at staff, striking Defendant Tennyson as he was exiting the cell. Plaintiff also attempted to entangle Defendants Tennyson and LaChance in his leg irons. (Defendants' Exhibits B-G.)

Defendants also attach a copy of the major misconduct hearing report regarding the incident. During the hearing, Plaintiff made an oral statement regarding his version of the events and the video was viewed outside Plaintiff's presence. Hearing Officer Mohrman noted that the video did not capture the incident on the stairs or in Plaintiff's cell. The other evidence considered included a photo of Defendant LaChance's shirt, the statements of Defendants Recker, Datto, LaChance, and Officer Perry, the statements of Plaintiff and his three prisoner witnesses, and the spit mask recommendation. In the report, Hearing Officer Mohrman found:

> 1. Disobeying a direct order. Guilty based upon the report as well as the statements of Office [sic] Datto which are consistent with one another. I find prisoner was told to keep moving after he stopped.

The prisoner was being escorted back to his cell by the officers. He stopped and was told to keep moving. The prisoner could have done so and did not.

2. Assault and battery. Based upon the report as well as officer Datto and the photo, I find him guilty. The prisoner's claim that this was fabricated and he was deliberately assaulted as he had insulted the [Resident Unit Manager] is not logical or believed. The prisoner spit on the officer and struck him in the upper chest area. This was deliberate and non consensual contact to injure and abuse the officer.

3. Assault and battery. (In cell). Guilty based upon the report as well as the statements of several staff who were present in the cell. The prisoner had just been returned to his cell - carried there by staff. The prisoner was placed on the floor. Tennyson was one of the last out and the prisoner kicked him in the legs. This is persuasive as the prisoner would still have been on the floor and it is logical he would have struck out at staff and thus would have kicked the officer in the legs. This was deliberate and intentional contact done to injure and abuse the officer.

(Defendants' Exhibit H.)

Defendants also attach the affidavit of Defendant Hulkoff, which states that she was called to Plaintiff's cell on July 10, 2003. Plaintiff was angry, agitated and yelling, and was threatening to harm staff. Because Plaintiff had refused to have his restraints removed, he was still wearing them. Plaintiff told Defendant Hulkoff that staff had assaulted him and that he had a cut on his elbow and bumps on his head. Defendant Hulkoff observed Plaintiff moving about his cell without apparent difficulty. Defendant Hulkoff noted that Plaintiff had an abrasion on his forehead, redness on his right cheek and a small scrape on his left elbow. She did not observe any active bleeding. Defendant Hulkoff gave Plaintiff an ice bag for his forehead and informed Plaintiff that he would be assessed further when he was ready to cooperate with staff. (Defendants' Exhibit G.)

According to Plaintiff's medical records, Plaintiff was examined by Nurse Kimsel on July 11, 2003, for his complaint that "custody jumped on me." Kimsel noted that Plaintiff had

slight bruising to his right forehead, but appeared to be in no acute distress. (Defendants' Exhibit K, p. 3.) Plaintiff was seen by a nurse on July 14, 2003, for complaints of headaches, a black eye, and sore ankles since the altercation on July 10, 2003. Plaintiff was observed to be alert and oriented to time, place and person, and was in no acute distress. Plaintiff had some right intraorbital discoloration without gross swelling, crepitus or bone deformity. Plaintiff's pupils appeared equal and reactive to light and Plaintiff had no drainage from his ears and only very slight discoloration to his forehead. Plaintiff had some discoloration on his outer ankles, but no ulceration or drainage. Plaintiff was told to take Tylenol for discomfort and was referred to the doctor for evaluation. Plaintiff was seen by a medical doctor on July 18, 2003, who observed that Plaintiff had no acute problems. (Defendants' Exhibit K, p. 4.)

In response to Defendants' motion, Plaintiff states that Defendants are lying and that he was assaulted and suffered serious injuries as a result. However, in the opinion of the undersigned, the record in this case demonstrates that Plaintiff was guilty of disobeying a direct order and assaulting staff, and that during the Defendants' attempt to control Plaintiff, he suffered minor injuries. Therefore, Defendants are entitled to summary judgment on Plaintiff's excessive force and failure to protect claims.

Plaintiff also claims that he was denied appropriate medical care in violation of the Eighth Amendment. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo County*, 390 F.3d 890, 899 (6th Cir. 2004). If, however the need involves "minor maladies or non-obvious complaints of a serious need for medical care," *Blackmore*, 390 F.3d at 898, the inmate must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." *Napier v. Madison County, Ky.*, 238 F.3d 739, 742 (6th Cir. 2001).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference "entails something more than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In

order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Estelle*, 429 U.S. at 105-06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Sanderfer*, 62 F.3d at 154-55; *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (6th Cir. 1976). The record shows that Plaintiff was seen by a nurse following the incident, and was observed to have only minor injuries. In addition, Plaintiff was examined by nurses again on July 11 and July 14 of 2003, and by a doctor on July 18, 2003. Each medical service provider noted that Plaintiff was not in any acute distress and suffered only minor injuries. Where, as here, "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Perez v. Oakland County*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998). Therefore, the undersigned recommends that Defendants be granted summary judgment with regard to Plaintiff's denial of medical care claims.

Defendants also claim that they Plaintiff's claims for damages are barred by 42 U.S.C. § 1997e(e), which states:

> No federal action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury.

*Id.* The Sixth Circuit repeatedly has held, albeit in unpublished decisions, that Eighth Amendment claims for monetary relief based on mental or emotional injury are precluded by § 1997e(e) absent a showing of physical injury. *See, e.g.*, *Merchant v. Hawk-Sawyer*, No. 01-6244, 2002 WL 927026, at *2 (6th Cir. May 7, 2002); *Garrison v. Walters*, No. 00-1662, 2001 WL 1006271, at *2 (6th Cir. Aug. 24, 2001); *Robinson v. Corrections Corp. of America*, No. 99-5741, 2001 WL 857204, at *1 (6th Cir. June 20, 2001); *Oliver v. Sundquist*, No. 00-6372, 2001 WL 669994, at *2 (6th Cir. June 7, 2001); *Williams v. Ollis*, Nos. 99-2168, 99-2234, 2000 WL 1434459 (6th Cir. Sept. 2000); *Raines-Bey v. Garber*, No. 99-1471, 2000 WL 658721, at *1 (6th Cir. May 12, 2000). The Second and Fifth Circuits also have found that § 1997e(e) applies to constitutional claims. *See Thompson v. Carter*, 284 F.3d 411 (2d Cir. 2002) ("Because the words 'federal civil action' are not qualified, they include federal civil actions brought to vindicate constitutional rights."); *Searles v. Van Bebber*, 251 F.3d 869 (10th Cir. 2001) (applying § 1997e(e) to constitutional claims, including First Amendment religion claims); *Herman v. Holiday*, 238 F.3d 660, 665 (5th Cir. 2001).

Defendants state that because Plaintiff's injuries were de minimis, he is barred from seeking damages for any emotional injury pursuant to § 1997e(e). In *Jarriett v. Wilson, et al.*, 162 Fed. Appx. 394 (6th Cir. 2005), the Sixth Circuit stated:

> This court has indicated in unpublished opinions that even though the physical injury required by § 1997e(e) for a § 1983 claim need not be significant, it must be more than *de minimis* for an Eighth Amendment claim to go forward. *See, e.g., Adams v. Rockafellow,* 66 Fed.Appx. 584, 586 (6th Cir.2003) (citing *Siglar,* 112 F.3d at 193,

and *Luong v. Hatt,* 979 F.Supp. 481, 485 (N.D.Tex.1997)); *Corsetti v. Tessmer,* 41 Fed.Appx. 753, 755 (6th Cir.2002) (citing *Siglar* and *Luong* in finding that two small bruises and minor cuts were *de minimis* injury); *Styles v. McGinnis,* 28 Fed.Appx. 362, 364 (6th Cir.2001) (citing *Siglar* ); *Benson v. Carlton,* 2000 WL 1175609, at * 1, 2000 U.S.App. LEXIS 21202, at *3 (6th Cir. Aug. 9, 2000), (citing *Siglar* in finding that prisoner's "whirling sensation" in head after missing a meal was *de minimis* injury); *see also Hudson v. McMillian,* 503 U.S. 1, 9-10, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992) (holding that "cruel and unusual punishment necessarily excludes from constitutional recognition *de minimis* uses of physical force") (quotation and citation omitted); *cf. id.* at 10, 112 S.Ct. 995 (finding that "bruises, swelling, loosened teeth, and a cracked dental plate" suffered as the result of a beating by prison guards were not *de minimis* injuries).

*Jarriett,* 162 Fed. Appx. 394, 400. As noted above, Plaintiff in this case suffered only small bruises and minor cuts. Therefore, in the opinion of the undersigned, Plaintiff's damages claims are barred by § 1997e(e).

Defendants also claim that Defendants Caruso and Straub are entitled to summary judgment for lack of personal involvement. Liability under Section 1983 must be based on more than merely the right to control employees. *Polk Co. v. Dodson*, 454 U.S. 312, 325-26 (1981); *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978). Thus, Section 1983 liability cannot be premised upon mere allegations of *respondeat superior*. *Monell*, 436 U.S. at 691; *Polk*, 454 U.S. at 325. A party cannot be held liable under Section 1983 absent a showing that the party personally participated in, or otherwise authorized, approved or knowingly acquiesced in, the allegedly unconstitutional conduct. *See e.g. Leach v. Shelby Co. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989), *cert. denied*, 495 U.S. 932 (1990); *Hays v. Jefferson*, 668 F.2d 869, 874 (6th Cir.), *cert. denied*, 459 U.S. 833 (1982). *See also Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir.), *cert. denied* 469 U.S. 845 (1984).

Supervisory officials can be held liable for the acts of their subordinates only if plaintiff establishes that the supervisor failed to appropriately discharge his supervisory duties, and that this failure resulted in a denial or deprivation of plaintiff's federal rights. *See e.g. Leach*, 891 F.2d at 1246; *Hayes v. Vessey*, 777 F.2d 1149, 1154 (6th Cir. 1985). However, the failure of a supervisor to supervise, control or train the offending employee is not actionable absent a showing that the official implicitly encouraged, authorized, approved or knowingly acquiesced in, or in some other way directly participated in, the offensive conduct. *Leach*, 891 F.2d at 1246. Such a claim requires, at a minimum, that the official had knowledge of the offending employee's conduct at a time when the conduct could be prevented, or that such conduct was otherwise foreseeable or predictable. *See e.g. Gibson v. Foltz*, 963 F.2d 851, 854 (6th Cir. 1992). In addition, plaintiff must show that defendant had some duty or authority to act. *See e.g. Birrell v. Brown*, 867 F.2d 956, 959 (6th Cir. 1989) (lower level official not liable for shortcomings of building); *Ghandi v. Police Dept. of City of Detroit*, 747 F.2d 338, 351 (6th Cir. 1984) (mere presence at the scene is insufficient grounds to impose Section 1983 liability in the absence of a duty to act); *accord Hall v. Shipley*, 932 F.2d 1147 (6th Cir. 1991). In addition, merely bringing a problem to the attention of a supervisory official is not sufficient to impose such liability. *See Shelly v. Johnson*, 684 F. Supp. 941, 946 (W.D. Mich. 1987) (Hillman, C.J.), *aff'd* 849 F.2d 228 (6th Cir. 1988). Finally, supervisory liability claims cannot be based on simple negligence. *Leach*, 891 F.2d at 1246; *Weaver v. Toombs*, 756 F. Supp. 335, 337 (W.D. Mich. 1989), *aff'd* 915 F.2d 1574 (6th Cir. 1990).

As noted by Defendants, Plaintiff has not alleged facts establishing that Defendants Caruso and Straub were personally involved in the activity which forms the basis of his claim. The only roles Defendants Caruso and Straub had in this action involve the denial of administrative grievances or the failure to act. Defendants Caruso and Straub cannot be liable for such conduct

under § 1983. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999), *cert. denied*, 530 U.S. 1264, 120 S. Ct. 2724 (2000). Accordingly, the undersigned recommends that Defendants Caruso and Straub be granted summary judgment for lack of personal involvement.

Defendants alternatively move for qualified immunity. Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An "objective reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful. *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987). "Qualified immunity balances two important interests-the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009).

In making a qualified immunity determination the court must decide whether the facts as alleged or shown make out a constitutional violation or whether the right that was allegedly violated was a clearly established right at the time of the alleged misconduct. *Id.* at 816. If the court can conclude that either no constitutional violation occurred or that the right was not clearly established, qualified immunity is warranted. The court may consider either approach without regard to sequence. *Id.* As previously discussed, because plaintiff cannot establish that his constitutional rights were violated, defendants are entitled to qualified immunity.

In summary, in the opinion of the undersigned, Plaintiff has failed to sustain his burden of proof in response to Defendants' motion for summary judgment. Accordingly, it is

recommended that Defendants' motion for summary judgment (Docket #131) be granted and this case be dismissed in its entirety.

Should the court adopt the report and recommendation in this case, the court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the undersigned recommends granting Defendants' motion for summary judgment, the undersigned discerns no good-faith basis for an appeal. Should the court adopt the report and recommendation and should Plaintiff appeal this decision, the court will assess the $455 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $455 appellate filing fee in one lump sum.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

 /s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated: September 23, 2009